## PACIFIC LIVE STOCK CO. v. ELLISON RANCHING CO. Et Al.

Nos. 2448, 2449

April 2, 1930.

286 P. 120.

*J. W. Dorsey* and *W. E. Cashman,* for Appellants :

*Edward F. Treadwell, G. F. Talbot* and *Joseph Sharp,*
for Respondent:

## OPINION

By the Court, SANDERS, J.:

These appeals concern adjudications of conflicting rights of the parties to the use of the waters of Quinn River and its tributaries in Humboldt County, which were made many years ago by Hon. E. J. L. Taber, judge of the Fourth judicial district, acting as judge pro tem. of the Sixth judicial district. The adjudications were made at the suit of the Pacific Live Stock Company, a lower proprietor, against upper proprietors of land irrigated from said river and the tributaries thereof. The decree adjudicates as many as sixty appropriative rights for irrigation, stock raising, and domestic purposes, with priorities ranging from

1868 to 1913. The adjudications made in 1919 have governed the rights of the parties, and all, with the exception of appellants, are presumably satisfied with the adjudications, since none other than appellants have appealed.

Justice DUCKER, now chief justice, being disqualified because of his having been attorney for certain of the defendants at the inception of the litigation, Hon. George A. Bartlett, judge of the Second judicial district court, was designated by the Governor to sit in his place and stead.

The two appeals were heard together. Since appeal No. 2449 is but the outgrowth of an order made after judgment in case No. 2448, one opinion will suffice.

The case was before us at an earlier stage upon respondent's motions to dismiss and to affirm certain orders, without reference to the merits of the case. Upon consideration of the respective motions ably argued and submitted on printed briefs, it was ordered that the motions stand over for hearing and decision when the case was presented on its merits. Pacific Live Stock Co. v. Ellison Ranching Co., 45 Nev. 1, 192 P. 262.

No intelligent opinion can be had as to the merits of the motions without a summary of the facts: In October, 1907, the Pacific Live Stock Company, a corporation, filed its complaint against as many as forty-five persons, cotenants, and corporations. The declared purpose of the suit was to quiet plaintiff's title to certain water rights in Quinn River, the plaintiff claiming an appropriation of 125 cubic feet of water per second with priorities as of the years 1872 and 1901. The complaint, after setting up plaintiff's ownership of certain arid lands described by their legal subdivisions, proceeded upon the theory that the defendants, for the statutory period of limitations under claim of right, had diverted the waters of Quinn River and the tributaries thereof at divers places on said river above the lands of plaintiff, and that a large portion of the waters so diverted was never returned to the river and was wholly lost to the

plaintiff; that by said diversions plaintiff was deprived of water to which it was legally entitled; and that, so long as said diversions continued, plaintiff would be unable to irrigate its lands or to properly or successfully cultivate the same or raise crops thereon. It was alleged that, if the defendants, or any of them, have any right to divert any water from said river or any of the tributaries thereof, such rights are subsequent and subordinate to plaintiff's alleged appropriations made by it and its grantors and predecessors in interest. The prayer of the complaint was that the defendants, and each of them, be required to set forth their claims to the use of the waters of said river and its tributaries, and that the rights of the plaintiff and the adverse claims of the defendants be ascertained and determined. The complaint seeks injunctive relief against the defendants from diverting any of the waters in such manner or to such extent as to deprive plaintiff of the waters to which it is entitled.

All the defendants answered, except four, who defaulted. In their separate answers, the defendants denied generally the rights of plaintiff as alleged and set up in themselves certain water rights in Quinn River and the tributaries thereof, as named in the answers, and sought a decree quieting their title as against the claims of plaintiff and the world.

Because of changes of title occurring after answers, a number of orders of substitution were made in the parties defendant. Among others, the Ellison Ranching Company was substituted as defendant in the place and stead of the Humboldt Cattle Company. Lizzie J. Anderson Dunn was substituted as defendant in the place and stead of the Anderson Land and Stock Company, James P. Anderson, Thomas McConnell (executor), Mary M. McConnell, Thomas McConnell, Charles McConnell, Clara Anderson, and B. F. Anderson. The trustees of the Anderson Land and Stock Company were also added as defendants.

Lizzie J. Anderson Dunn, as successor in interest of the Anderson and McConnell interests, filed a

cross - complaint against the plaintiff. None of the codefendants, however, were made parties to this cross-complaint. Lizzie J. Anderson Dunn also filed a cross - complaint against the defendant Ellison Ranching Company.

The Ellison Ranching Company filed a cross-complaint against the plaintiff and also a large number of the defendants, including the Anderson and McConnell interests.

The decision of the court was filed on January 6, 1919. No written notice of the decision was given, but after the decision was filed the attorney for the plaintiff prepared a draft of findings of fact, conclusions of law, and a decree in accordance with the decision, and submitted the same to Judge Taber and to the attorneys appearing in the case. Afterwards an informal hearing was had with respect to the proposed findings of fact, conclusions of law, and the decree, at which time the attorneys for the McConnell-Anderson interests and Lizzie J. Anderson Dunn made certain objections thereto and suggested certain changes therein. Thereafter, the same attorneys presented to the court a written argument in support of their respective objections, claiming, among other things, that certain streams that the court found to be tributary to Quinn River in its decision should be held not to be tributary, and that certain acts of the plaintiff disentitled it to the relief granted it by the decision.

Thereafter, on, to wit, April 9, 1919, the court caused to be entered its findings of fact, conclusions of law, and a final decree in accordance with the decision theretofore made.

On April 21, 1919, the Anderson defendants (appellants) served notice of intention to move for a new trial. The notice of motion was addressed to and served only on the plaintiff and the defendant Ellison Ranching Company. This was evidently on the theory that the plaintiff and the cross - complainant Ellison Ranching Company were the only adverse parties.

On April 26, 1919, appellants served on the plaintiff

and the defendant Ellison Ranching Company a notice of motion for correction of specified defects, errors, and omissions in the findings, requiring changes therein and in the decree.

On June 25, 1919, the motion to change and modify the findings and the decree, together with the notice of motion for new trial, came on for hearing, and said motions were on June 27, 1919, denied and overruled.

Thereafter, on July 1, 1919, appellants served notice of appeal from certain parts or portions of the decree .dated April 9, 1919, and from the order denying a new trial dated January 27, 1919. The one notice of appeal was addressed to the plaintiff and to the defendants and cross - complainants, and their respective counsel. The notice, however, was only served upon the plaintiff and the defendant Ellison Ranching Company.

Thereafter, on August 16, 1919, appellants served their notice of appeal from the order denying the application and motion of appellants to change and modify the findings of fact, conclusions of law, and the decree, dated June 27, 1919. The notice of appeal from this order made after judgment was only served upon the plaintiff and the defendant Ellison Ranching Company.

Thereafter, on August 22, 1919, appellants caused to be filed and incorporated in the record a document, styled "Stipulation in re Appeals." The stipulation reads in part as follows: "It is hereby stipulated, each of the signers hereof appearing and agreeing for the party or parties represented by him, that the following defendants in the above-entitled cause, to wit: (Here follows the names of all of the defendants appealing.) Duly perfected their motion for a new trial herein; and their application to amend, modify, and correct the findings of fact, conclusions of law and judgment therein; and their appeal from parts of said judgment, and from the order of said court denying and refusing to grant a new trial herein; and that the undertaking required by law was executed and filed within the time prescribed by law." The signatories to the stipulation were attorneys of record for eleven of the answering defendants.

The notice of appeal from the judgment or decree states, in substance, that appellants appeal from that portion of the decree which adjudges priorities of right in favor of plaintiff and against defendants, and from so much thereof as deprives defendants and gives to the plaintiff the use, or right to use, any of the waters claimed by them in their answers; and particularly from those parts of the decree which give to the plaintiff, or limit the rights of the defendants as to the waters, or any thereof, of Twelve Mile creek, Canyon creek, Pole creek, Spring creek, North Flat creek, South Flat creek and Skull creek, or any of said creeks; and from those parts which enjoin defendants from using or interfering with the waters, or the flow of said or any, of said streams; and from those parts or portions of the decree which give to the plaintiff as against defendants or enjoin defendants from interfering with the flow to the plaintiff of 16.44 second feet, or any quantity, of the waters of Quinn River; and from those parts which enjoin said defendants from maintaining any dam, ditch, levee, or other work which shall prevent the plaintiff from receiving the several amounts, or any quantity, of water adjudged to it.

It is particularly stated in the notice of appeal that it is the intention of defendants to appeal from all of those parts of the judgment, and from those parts only, which are in favor of the plaintiff and against the defendants; which parts of the judgment appealed from are to be found in paragraphs I, IV, V, VI, VII, IX, XI, XIII, XIV, XVI, and XVII of the decree.

The notice also states that the appeal is taken from the order denying defendants' motion for new trial, dated on June 27, 1919.

The decision and the decree in detail determine the rights of the parties who had answered, with the exception of four of the defendants, namely I. B. English, Thomas Scott and Lena Scott, and Charles Clute. The decree specifies the priority and number of second feet of water appropriated by each defendant as set forth in a table showing the dates of appropriation, the priority

and the particular stream from which each appropriation was made, the names of the owners and the acreage irrigated by each appropriation; the name of the stream and place of appropriation. It was also decreed that each of the parties are the owners of the flow and use of the several amounts of water appropriated by them set forth in the decree from the stream or streams therein named. In the decree the title of each of the parties to the water rights decreed is quieted. We note that the decree reduces plaintiff's claimed right of 125 second cubic feet to 30.20 second feet with priorities as of the years 1874, 1887, 1893, and 1901.

In the state of the record as above outlined, counsel for respondent conclude that the appeals should be dismissed and the respective orders should be affirmed. First, because the notice of appeals was not served on the adverse parties; second, that the appeal from the order denying appellants' motion to change the findings and the decree should be dismissed, because it is not an appealable order; third, that the order denying appellants' motion for new trial should be affirmed, because the notice of motion was not served on the adverse parties and was not served within ten days after notice of the decision; fourth, that the order denying appellants' motion to change and modify the findings and the decree should be affirmed, because the notice therefor was not served on the adverse parties and because the notice was not served until after final judgment.

It will be observed that the grounds for the respective motions to dismiss and to affirm are based primarily upon the alleged failure of appellants to serve their notice of appeals on the adverse parties. In support of this contention it is argued on behalf of respondent that all the nonappealing defendants are "adverse parties" in the sense of the code and were entitled to notice of appeal. On the other hand, counsel for appellants insist and contend that, under the issues made by the pleadings, the defendants inter sese were not

adverse parties; that the decree is a nullity as respects the adjudication of the water rights of defendants as among themselves.

In support of these contentions, it is argued that the suit was one in equity to determine the order of priority among numerous appropriators of the waters of Quinn River and the tributaries thereof; that the issues made by the pleadings created a severable and separate controversy with each defendant, dependent upon separate and independent rights calling for separate evidence, and that, there being no issues between the defendants, the plaintiff has no interest in the rights of the nonappealing defendants among themselves. Therefore the decree, in so far as it adjudicates the rights of the defendants as between themselves, is a nullity. We are not in accord with these contentions. The plaintiff in its complaint asserts a right to 125 cubic feet per second of water in Quinn River with priorities as of the years 1872 and 1901. The complaint assumes that the defendants have rights in the waters of Quinn River, and the plaintiff seeks a decree defining the rights of all the parties and establishing the rights of the plaintiff. This, indeed, is the most important object of the action, the office of the injunction as prayed in the complaint being merely to preserve and protect the rights of all the parties when so defined. In a suit to quiet title to water rights, such as this, the main purpose is to determine the respective rights of the parties to the use of the water. A decree which leaves the controversy between the parties unsettled, unadjudicated, undetermined, and subject to future litigation, defeats the very purpose for which the action is brought. 3 Kinney, Water Rights (2d ed.), sec. 1557. In Union M. & M. Co. v. Dangberg (C. C.), 81 F. 73, 119, Judge Hawley well said: "A practical view ought to be taken of all the conditions, surroundings, and situations. The rights of all parties must be protected by the decree. The difficulty of enforcing it without the necessity of bringing independent suits should be avoided, if possible.

Certainty in its terms, positiveness in its requirements, justice in its conclusions, will materially aid in the accomplishment of such a purpose." The decree here criticized for its certainty and definiteness with respect to the rights of all the parties to the use of the waters of Quinn River and its tributaries is not a nullity in so far as it determines in detail those rights. Because of the intrinsic difficulties in the formation of findings, involving appropriations of water of the numerous defendants, made the subject of the action with priorities ranging from 1868 to 1913, Judge Taber is to be commended for his decree, certain and definite as to the parties, the order of priorities, the quantity of water which each defendant is entitled to use, the places and time of use, leaving no controversy between the parties unsettled and unadjudicated. There are cases adjudicating the water rights of a stream with its tributaries in which it is not necessary to bring all the parties interested in the adjudication in this court on appeal. But this is not such a case. The case here upon trial did not resolve itself into separate controversies involving some of the parties without involving others.

The essential prerequisite condition to give this court jurisdiction of an appeal is that the notice of appeal must be served upon the "adverse party" or "his attorney." Section 5330, Revised Laws. Every party whose interest in the subject matter of the appeal is adverse to or will be affected by the reversal or modification of the decree or judgment is an adverse party in the sense of the code, and entitled to notice of appeal. This proposition is so well settled as not to need the citation of authorities. Upon the hearing of the respective motions to dismiss and affirm, it was declared in the preliminary opinion that the general test for determining who are "adverse parties," within the meaning of the statutes concerning notices of appeal, is whether or not such parties would be affected by modification or reversal of the decision, citing authorities to which we now add Kondas v. Washoe County Bank, 50 Nev. 181,

254 P. 1080; Wendt v. Eastern Oregon Land Co. (In Re Burnt River Water Rights), 116 Or. 525, 241 P. 988; 2 Cal. Jur. sec. 120, et seq. Counsel concede the rule to be as stated, but insist that the reversal or modifica- tion of the portions of the decree appealed from would not affect the adjudicated rights of the nonappealing defendants. Therefore, they are not "adverse parties" entitled to notice of appeal. The decreê fixes the duty of water as between all the contestants. It quiets the title of all adverse claimants to the use of the water. The reversal or modification of the parts or portions of the decree appealed from applies to all the adjudications affecting the use of the water, made the subject of the suit. Its reversal or modification would necessitate a retrial of the case and throw open to readjudication the rights of all the contestants. We need not speculate in what respect a reversal or modification of the decree would affect the nonappealing defendants. It is suffi- cient to say that upon appellants' own showing the rights as between them and the plaintiff cannot be determined without the presence of all the parties interested and not served with notice of appeal. In Re Burnt River Water Rights, supra.

Appellants have attempted to relieve them- selves of the situation made by their failure to give and serve notice of appeal upon all the defendants interested in the subject matter of the suit by obtain- ing from the attorneys for certain of the defendants the stipulation as above set out. Certainly the signa- tories to this stipulation, representing no more than eleven of the answering defendants, could not bind those defendants not parties thereto. It is argued that the stipulation does not attempt to waive notice of appeal, but that it simply admits that what should have been done to affect the appeal was seasonably and properly done; that it was obtained for the pur- pose of showing that every step required to be taken, and in so far as required to be made, was taken and made within the time and in all respects as required by law. It is for us to determine whether or not the

appeals were perfected in the manner and time as required by law. The stipulation, in our opinion, does not operate to confer jurisdiction.

■ In its motion to dismiss, the respondent also seeks the affirmance of the order denying appellants' motion for new trial, without reference to the merits of the case, upon the ground that the notice of intention to move for new trial was not served on all the adverse parties. On the former hearing of the respective motions, it was considered that the motion to affirm could only be determined upon consideration of the appeal itself. It was for this reason we were largely influenced to order that the motions stand over for hearing until the appeal was presented upon its merits. A review of the authorities convinces us that we were right in making the order. The question of whether others should be made parties to a motion for new trial is not involved in a motion to dismiss an appeal from an order denying the motion. Adopting the language of Angellotti, J., in Johnson v. Phenix Insurance Company, 146 Cal. 571, 80 P. 719, 720: "A failure to serve an adverse party with notice of intention to move for a new trial may be a reason for denying the motion for a new trial, and for affirming such order on appeal; but it does not constitute a reason for the dismissal of the appeal upon the ground that the court has not acquired jurisdiction to hear it. In Re Ryer, 110 Cal. 556, 559, 42 P. 1082. See, also, Barnhart v. Fulkerth, 92 Cal. 155, 28 P. 221." In addition to these authorities, we cite other decisions collated in notes to section 125 of 2 Cal. Jur. p. 342.

The question, therefore, is whether the failure of appellants to give and serve their notice of intention to move for a new trial upon their codefendants furnishes sufficient ground for the affirmance of the order denying the motion. The record discloses that the motion was based principally upon the ground of the insufficiency of the evidence to support the findings and the decision, with respect to the adjudication of the conflicting rights between the plaintiff and the movants.

■■ The same rules govern in determining who is an "adverse party" to motions for new trial and to appeals. Johnson v. Phenix Insurance Co., supra; Niles v. Gonzalez, 152 Cal. 90, 92 P. 74; Id., 155 Cal. 359, 100 P. 1080; Herriman v. Menzies, 115 Cal. 25, 44 P. 660, 46 P. 730, 35 L. R. A. 318, 56 Am. St. Rep. 81. Being as we are of the opinion that the nonappealing defendants were adverse parties entitled to notice on appeal, it follows that they were entitled to notice as adverse parties of the motion for new trial. The codefendants were directly interested in the result of the motion, and the granting of it to appellants would necessarily affect their adjudicated relative rights in and to the waters of the river and its tributaries. Under the circumstances and in the light of the grounds upon which appellants sought a new trial, we are of the opinion that the denial of the motion furnishes good and sufficient grounds for the affirmance of the order.

These conclusions render it unnecessary for us to consider and discuss the other grounds urged for the dismissal of the appeals and the affirmance of the orders.

■ In case No. 2449 the plaintiff and appellant, Pacific Live Stock Company, appeals from an order made on the 27th of June, 1919, permitting the Anderson defendants to amend their answers so far as to put directly in issue the question of fact as to the tributary character of Twelve Mile creek, Pole creek, Spring creek, North Flat creek, South Flat creek, and Skull creek as tributaries to Quinn River. The trial court's decision was not based upon the answers, as amended, and we might hold that the propriety of the order becomes a moot question, but, since no point is made of this, we, upon careful examination of the pleadings, findings, and decree, shall affirm the order upon the theory that the plaintiff and appellant has not shown that it was prejudiced by the amendment as ordered. The amendment in no way affects the judgment in favor of the plaintiff. The plaintiff is not complaining

of the decree, which in effect adjudges said creeks, and each of them, to be tributaries of Quinn River. The testimony in reference to the tributary character of these creeks was admitted in evidence without objection. In fact it was one of the leading questions in the case, and the finding that they are tributary in character constitutes one of the principal grounds urged for the reversal of the order denying a new trial. Under these circumstances, we are of opinion that the court, in the furtherance of justice, did not abuse its discretion in permitting the answers to be amended.

We are satisfied that the motions to dismiss the appeal and to affirm the order denying appellants' motion for a new trial should be sustained, and that the order appealed from in case No. 2449 should be affirmed.

It is so ordered.